UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DIMITRIOS GOROS,

                              Plaintiff,

v.                                                      9:03-CV-0407
                                                        (GLS/GHL)
J. ROSADO, Deputy Superintendent of Health;
Y.D. SHARMA, Physician and Medical Director;
DR. BURDICK, Physician,

                              Defendants.

_____

APPEARANCES:                              OF COUNSEL:

DIMITRIOS GOROS, 93-A-5609
     Plaintiff, *Pro Se*
Mohawk Correctional Facility
6100 School Road
P.O. Box 8451
Rome, NY 13442

HON. ELIOT L. SPITZER                     CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York   Assistant Attorney General
     Counsel for Defendant
The Capitol
Albany, NY 12224-0341

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This action has been referred to the undersigned for Report and Recommendation by the

Honorable Gary L. Sharpe, United States District Judge, pursuant to Local Rule 72.3(c) and 28

U.S.C. § 636(b).  Plaintiff, an inmate at Mohawk Correctional Facility, commenced this *pro se*

action pursuant to 42 U.S.C. § 1983 against three employees of Mohawk Correctional Facility–

Deputy Superintendent of Health J. Rosado, Dr. Y.D. Sharma, and Dr. Burdick.[1]  Generally,

Plaintiff alleges that, from December of 2002 to February of 2003, Defendants were deliberately

indifferent to Plaintiff's serious medical needs, which included arthritis and a gastrointestinal

disorder, in violation of the Eighth Amendment of the United States Constitution.  (Dkt. No. 6

[Am. Compl.].)  Currently pending are (1) Plaintiff's motion for a preliminary injunction (Dkt.

No. 34), and (2) Defendants' cross-motion for judgment on the pleadings pursuant to Fed. R.

Civ. P. 12(c) (Dkt. No. 39).  Plaintiff has not opposed Defendants' motion.  For the reasons that

follow, I recommend that Defendants' cross-motion be granted and that Plaintiff's motion be

denied.

## I.    BACKGROUND

### A.    Factual Allegations

In his Amended Complaint, Plaintiff alleges as follows.  On November 20, 2002, while

Plaintiff was incarcerated at Wende Correctional Facility, Plaintiff was prescribed 15 milligrams

of Prevacid for gastritis.  In addition, at some point before December 4, 2002, Plaintiff was

prescribed 12.5 milligrams of Vioxx for arthritis.

On December 4, 2002, he was transferred to the Walsh Medical Unit at Mohawk

---

[1]    The docket in this matter inaccurately lists Defendants as the following: (1) the Central Office Review Committee (of the New York State Department of Correctional Services); (2) Angel Gutierrez, Physician; and (3) Virginia Bluff, a "Practice License Physician." Apparently, this error results from two facts, as I will discuss further below in Parts I.C.1. and I.C.2.c. of this Report-Recommendation: (1) the fact that those three Defendants were the Defendants named in the caption of Plaintiff's original Complaint (Dkt. No. 1), which was conditionally dismissed by Order of the Court dated April 7, 2003, unless Plaintiff filed an Amended Complaint (Dkt. No. 4); and (2) the fact that, rather than serving his Amended Complaint upon the three Defendants named therein, Plaintiff served his Amended Complaint on CORC, Dr. Gutierrez, and Ms. Bluff (Dkt. No. 39, Part 8 [Defs.' Mem. of Law]).

Correctional Facility.  W hen he arrived at the Walsh Medical Unit, Defendants Sharma and

Burdick, without having examined Plaintiff, changed the doses of Plaintiff's medications,

doubling the doses to *25* milligrams of Vioxx and *30* milligrams of Prevacid.

On December 5, 2002, Plaintiff personally complained to Defendant Burdick that the

"double dose" of Prevacid was "too much for my stomach," and he asked Defendant Burdick to

refill his medications in the doses in which they were originally prescribed.  Defendant Burdick

refused, telling Plaintiff that the Walsh Medical Unit did not have 12.5-milligram pills of Vioxx

or 15-milligram pills of Prevacid in stock (only 25-milligram pills of Vioxx and 30-milligram

pills of Prevacid).

On December 8, 2002, Plaintiff wrote to Defendant Rosado and requested to be informed

of who changed the doses of Plaintiff's medications.

On December 12, 2002, Plaintiff received a response from Defendant Sharma who was

writing on behalf of Defendant Rosado.  In that response, Defendant Sharma stated that Prevacid

does not come in 10-milligram pills, and that if Plaintiff has any questions he should contact his

health care provider.  That same day, Plaintiff wrote to Defendant Sharma, stating that his health

care provider is "anonymous."[2]  Defendant Sharma did not write back to Plaintiff.

On December 16, 2002, Plaintiff personally explained to Defendant Sharma that a nurse

at Wende Correctional Facility (Val Payne) had told Plaintiff that "Albany has given [Plaintiff

the] okay" to receive 15-milligram pills of Prevacid.  Plaintiff also explained that, although he

had used the 30 milligram pills of Prevacid for ten days, the pills were of "no help."

On December 24, 2002, Plaintiff asked Defendant Burdick for the original dosage of his

---

[2]          (Dkt. No. 6, ¶ 12 [Am. Compl.].)

medications, since the "double dose" was bothering him.  However, Defendant Burdick did not respond to Plaintiff.

On December 26, 2002, Defendant Rosado advised Plaintiff to take the 25-milligram pills of Vioxx or 30-milligram pills of Prevacid, and that no further discussion on the subject was needed.

On December 31, 2002, Defendant Sharma, who was responding on behalf of Defendant Rosado, informed Plaintiff that the "Central Pharmacy Formulary" carries Prevacid in only 30-milligram pills, and that in the future he should talk to Defendant Burdick if he had any questions.

Again, on January 23, 2003, Plaintiff asked Defendant Burdick for the original dosage of his medications, since the "double dose" was bothering him.  However, again, Defendant Burdick did not respond to Plaintiff.

On February 4, 2003, Defendant Sharma, who was responding to Plaintiff on behalf of Defendant Rosado, informed Plaintiff that the "Central Pharmacy Formulary" carries Prevacid in only 30-milligram pills, and that in the future he should talk to Defendant Burdick if he had any questions.

On February 11, 2003, and February 12, 2003, Plaintiff asked a nurse if he could see a physician, since he was experiencing "worse pain" in his stomach and in his left shoulder. However, no physician examined Plaintiff on those dates.

On February 13, 2003, Plaintiff again asked to see a physician.  Defendant Burdick came to Plaintiff's room, and angrily asked him what he wanted.  Plaintiff said that he wanted the original dosage of his medications, and that he was experiencing "worse pain" in his left shoulder

4

and his legs.  Defendant Burdick observed that Plaintiff had been refusing to take the 25-milligram dose of Vioxx and the 30-milligram dose of Prevacid.  Plaintiff told Defendant Burdick that he would not "harm himself" by taking a "double dose" of medications.  Defendant Burdick told Plaintiff that he was a prisoner and that he could take only those medications that the prison had in stock.  Plaintiff said to Defendant Burdick, "[R]emember this date [of] February 13 [and] what you said. . . .  [I am] a human being[,] a prisoner . . . [who you are trying to make] harm himself [by taking a double dose]."[3]  Later that day, Defendant Burdick wrote Plaintiff a misbehavior report apparently alleging that Plaintiff had threatened Defendant Burdick through (among other things) waving his hands while talking.

Finally, Plaintiff alleges that through their deliberate indifference to his serious medical needs, Plaintiff has experienced the onset of the following physical ailments--pulmonary stenosis, emphysema, difficulty breathing, acid reflux after eating, daily diarrhea, and weight loss.  (*See* Dkt. No. 6, ¶¶ 8-22, 26-28 [Am. Compl.].)

**B.    Procedure**

On April 26, 2005, Plaintiff filed a "motion . . . for . . . an injunction and . . . compensatory damages."  (Dkt. No. 34.)  Specifically, the motion requested unspecified injunctive relief (presumably to compel certain Department of Correctional Services medical personnel to provide Plaintiff with different medication than that which he has been receiving) and $80,000 in compensatory damages.  (Dkt. Nos. 34, 35.)  As the basis for his requested relief, Plaintiff cites events that occurred after February 13, 2003 (and into February of 2005), at various correctional facilities (including those other than Mohawk Correctional Facility), involving

---

[3]        (Dkt. No. 6, ¶ 21 [Am. Compl.].)

various persons (including persons other than the three Defendants named in the current action). (*Id.*)  In addition to failing to comply with Rule 7(b)(1) of the Federal Rules of Civil Procedure ( which requires that all motions shall "state with particularity the grounds therefor, and set forth the relief or order sought"), Plaintiff's motion papers failed to comply with Local Rule 7.1(a)(1) of the Local Rules of Practice for this Court (which requires that Plaintiff's motion include a memorandum of law).  (*Id.*)

On May 26, 2005, Defendants opposed Plaintiff's motion, and cross-moved for judgment on the pleadings on three grounds: (1) Plaintiff has failed to comply with certain Orders of this Court requiring him to serve his Amended Complaint upon the three Defendants named therein; (2) Plaintiff has failed to state a claim for deliberate indifference to serious medical need under the Eighth Amendment; (3) Plaintiff has failed to obtain personal jurisdiction over the three Defendants named in his Amended Complaint, and he has failed to obtain subject matter jurisdiction over the entity and two individuals whom he did serve (i.e., the Central Office Review Committee, Dr. Angel Gutierrez, and Ms. Virginia Bluff).  (Dkt. No. 39, Part 8 [Defs.' Mem. of Law].)

On or about May 26, 2005, the Clerk of the Court sent Plaintiff by regular mail a notice informing him that his response to Defendants' cross-motion was due by June 20, 2005.  In addition, in their Notice of Motion, mailed to Plaintiff on May 26, 2005, Defendants advised Plaintiff that he was required to respond to Defendants' cross-motion, and that any failure to so respond may result in an Order of dismissal of his Amended Complaint, under Local Rule 7.1 of the Rules of Practice for this Court.  (Dkt. No. 39, Part 1 [Defs.' Notice of Motion].)  Still, Plaintiff did not respond to Defendants' cross-motion by June 20, 2005, nor has he attempted to

do so since that date (nor has he filed any papers in this action since that date).

## II.   DISCUSSION

### A.   Effect of Plaintiff's Failure to Respond to Defendants' Cross-Motion

"Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

Here, Defendants' cross-motion for judgment on the pleadings was properly filed, Plaintiff has failed to oppose it (despite being warned of the possible consequences of that failure), and Plaintiff has failed to show good cause why his failure to oppose Defendants' cross-motion should not be deemed as consent to the granting of the motion. Therefore, I must determine whether Defendants have met their burden to demonstrate entitlement to judgment on the pleadings under Rule 12(c).[4]

### B.   Standard of Review on Motion Under Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed . . . any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)."[5]

---

[4]       *See also* Fed. R. Civ. P. 7(b)(1) (requiring motions to, *inter alia*, "state with particularity the grounds therefor").

[5]       *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted); *accord*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief,"[6] or the defendant must show that the plaintiff's claim "fails as a matter of law."[7]  Thus, a defendant may base a Rule 12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[8] or (2) a challenge to the legal cognizability of the claim.[9]

---

123, 126 (2d Cir. 2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

[6]      *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

[7]      *Phelps v. Kapnolis*, 308 F.3d 180, 187 (2d Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 108, n.16 [1976].)

[8]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[9]      *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v.*

8

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[10] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[11] The purpose of this rule is to "facilitate a proper decision on the merits."[12] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the

---

*McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

   [10]   *See Swierkiewicz* 534 U.S. at 511-512, 515.

   [11]   *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

   [12]   *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).

Court to assess the sufficiency of [plaintiff's] claims."[13]

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").  However, even this liberal notice pleading standard "has its limits."[14]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the

---

[13]	*Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[14]	2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g., Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

plaintiff's favor."[15]  "This standard is applied with even greater force where the plaintiff alleges

civil rights violations or where the complaint is submitted *pro se*."[16]  Indeed, "courts must

construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they

suggest."[17]

Moreover, when addressing a *pro se* complaint, generally a district court "should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated."[18]  However, the liberal standard accorded

to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely

suspended."[19]  For example, an opportunity to amend should be denied where "the problem with

[plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[20]

---

[15]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of
motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[16]     *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d
195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d
Cir. 1999) (citation omitted).

[17]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's
conclusory allegations of a due process violation were insufficient) (internal quotation and
citation omitted).

[18]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and
citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when
justice so requires").  Of course, granting a *pro se* plaintiff an opportunity to amend is not
required where the plaintiff has already been given a chance to amend his pleading.

[19]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y.
1980) (citations omitted), *accord*, *Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[20]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation
omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of
course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint
should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)

Finally, as with a Rule 12(b)(6) motion, Rule 12(c) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings.[21]

### C.    Review of Merits of Defendants' Cross-Motion

After thoroughly reviewing Defendants' papers in support of their cross-motion for judgment on the pleadings, and Plaintiff's liberally construed Amended Complaint, I have determined that Defendants have met their burden to demonstrate entitlement to judgment on the pleadings under Rule 12(c) for the reasons stated in Defendants' memorandum of law (Dkt. No. 39, Part 8 [Defs.' Mem. of Law].).  Authority exists suggesting that a review of whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion to dismiss.[22]  However, even if I

---

(citation omitted).

[21]    *See* Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

[22]    *See*, *e.g.*, *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") (emphasis added) (citations omitted); *Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *see also Wilmer v. Torian*, No. 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers*), adopted by* 1997 U.S. Dist. LEXIS 16340, *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent Montello*, No. 95-CV-989, 1996 U.S. Dist. LEXIS 15072, *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

were to treat Defendants' motion as contested, I would conclude that it has merit.

**1.    Whether Plaintiff Should Be Sanctioned for Failing to Serve the Named Defendants**

The points that Defendants makr in support of this argument are well taken.  (Dkt. No. 39, Part 8 at 5-6 [Defs.' Mem. of Law].)  Two Federal Rules of Civil Procedure and a Local Rule of Practice for this Court permit the Court to dismiss Plaintiff's Amended Complaint under the circumstances.  *See* Fed. R. Civ. P. 16(f) (providing that failure to obey a pretrial order may subject an action to *sua sponte* dismissal); Fed. R. Civ. P. 41(b) (preserving a district court's inherent power to *sua sponte* dismiss where plaintiff has failed to prosecute an action or failed to comply with an order of the Court);[23] N.D.N.Y. L.R. 41.2(a) (permitting *sua sponte* dismissal for failure to prosecute an action).[24]

Specifically, on May 7, 2003, District Judge Lawrence E. Kahn ordered Plaintiff to "comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action."  (Dkt. No. 7 at 3.)  On July 15, 2003, Judge Kahn reminded Plaintiff of his failure to comply with requests by the Clerk's Office for necessary documents, and Judge Kahn again ordered Plaintiff to comply with requests by the Clerk's Office.  (Dkt. No. 10 at 2.)

---

[23]    *See Saylor v. Bastedo*, 623 F.2d 230, 238-239 (2d Cir. 1980) (recognizing that, under the language of Rule 41[b], a district court retains the inherent power to dismiss a plaintiff's complaint, *sua sponte*, for failure to prosecute--for example, for failure to timely serve the complaint after filing) (citations omitted).

[24]    Plaintiff was given prior notice of the likelihood of dismissal twice in Orders of the Court.  (Dkt. No. 12 at 2; Dkt. No. 13.)  In addition, he was given such notice through Defendants' own motion papers.  (Dkt. No. 24.)  *See Woolfolk v. Thomas*, 725 F. Supp. 1281, 1285 (N.D.N.Y. 1989) (dismissing complaint without prejudice insofar as it named one defendant where plaintiff received notice of that defendant's inadequate-service argument through other defendants' motion papers) (citations omitted).

However, Plaintiff failed to comply with those Orders. (*See*, *e.g.*, Dkt. No. 23 [Notice to Plaintiff from U.S. Marshal's Service, filed on 4/19/04, stating, "You have failed to provide forms USM-285, Request for Service, for all defendants to be served. Complete the enclosed forms and return to this office for service."]; Dkt. Nos. 19, 20, 25 [Acknowledgments of Service as to CORC, Virginia Bluff, Angel Gutierrez but not the three Defendants named in the Amended Complaint].)

In addition, I note that Plaintiff has violated Rule 4(m) of the Federal Rules of Civil Procedure, which requires "service of the summons and complaint . . . upon a defendant within 120 days after the filing of the complaint . . . ." Fed. R. Civ. P. 4(m).

However, I believe that a sanction of dismissal would be an unduly harsh response to Plaintiff's failure to properly serve his Amended Complaint. Plaintiff is a civil rights litigant who is proceeding *pro se*. In addition, because the three-year statute of limitations has run with respect to the claims asserted in Plaintiff's Amended Complaint, a dismissal "without prejudice" would effectively constitute a dismissal with prejudice. A less-severe response might be to grant Plaintiff a short extension of time in which to provide to the United States Marshal's Service any and all documents necessary for the service of his Amended Complaint and/or to show good cause for his failure to previously serve the Amended Complaint.

For these reasons, I would not recommend dismissal of Plaintiff's Amended Complaint based on this particular ground. Rather, I believe that other, more appropriate grounds exist upon which to base a dismissal of Plaintiff's Amended Complaint.

14

**2.    Whether Plaintiff Has Failed to State a Claim for Deliberate Indifference to a Serious Medical Need Under the Eighth Amendment**

Generally, to state a claim for deliberate indifference to a serious medical need under the Eighth Amendment, Plaintiff must allege two things: (1) that he had a *sufficiently serious medical need*; and (2) that Defendants were *deliberately indifferent* to that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

**a.    Serious Medical Need**

Case law certainly exists suggesting that, as alleged, Plaintiff's arthritis and gastrointestinal disorders may not rise to the level of a sufficiently serious medical condition for purposes of the Eighth Amendment.[25]  In particular, noticeably missing from Plaintiff's allegations are any factual assertions indicating that his conditions, when experienced together, constituted a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996).  The closest Plaintiff comes to alleging a

---

[25]    *See, e.g.*, *Taylor v. Kurtz*, 00-CV-0700, 2004 U.S. Dist. 27925, at *5-6, 8-13 (W.D.N.Y. Oct. 28, 2004) (prisoner's degenerative arthritic knee condition did not constitute a serious medical need); *Baczkowski v. N.Y. State Dept. of Corr.*, 04-CV-6192, 2004 U.S. Dist. LEXIS 12229, at *12-15 (W.D.N.Y. June 24, 2004) (prisoner's "cold sweats, nausea and vomiting" resulting from medications, combined with "discomfort" resulting from slip on wet floor, did not constitute a serious medical need); *Veloz v. New York*, 35 F. Supp.2d 305, 309, 312 (S.D.N.Y. 1999) (prisoner's foot problem, which involved arthritis and pain, did not constitute a serious medical need); *Maurice v. N.Y.C. Dep't of Corr.*, 93-CV-6008, 1997 U.S. Dist. LEXIS 11057, at *2, 6-8 (S.D.N.Y. July 30, 1997) (prisoner's "stomach cramps, sweating and nausea," resulting from consumption of food to which he had an allergy, did not constitute a serious medical need); *cf. Alexander v. Coughlin*, 90-CV-3231, 1991 U.S. Dist. LEXIS 10661, at *3, 6 (E.D.N.Y. July 26, 1991) (prisoner's diarrhea constituted sufficiently "serious" medical condition for purposes of Rule 12[b][6] where prisoner alleged that he experienced "severe abdominal pains" for two days; holding that such a condition could be sufficiently serious if it caused a prisoner "acute pain").

sufficiently serious medical need is through his allegations of "worse[ning] pain" in his left shoulder and legs (presumably, arthritic pain). However, he alleges that he complained of this pain only on three dates over a nine-week period–i.e., on February 11, 12, and 13, 2003. (Dkt. No. 6, ¶¶ 18, 19 [Am. Compl.].) Furthermore, he fails to allege that the pain was chronic or acute (e.g., by using such words as "constant," "extreme," "severe," or "horrible," etc.). (*Id.*)

Having said that, I agree with Defendants that, although it is extremely questionable that Plaintiff has alleged a medical condition that is sufficiently serious for purposes of the Eighth Amendment, the prudent course of conduct would be to assume, for the sake of argument, that Plaintiff has in fact alleged a sufficiently serious medical condition. (Dkt. No. 39, Part 8 at 7-8 [Defs.' Mem. of Law].)

### b.      Deliberate Indifference

As Defendants argue, it is this second element of a deliberate indifferent claim with regard to which Plaintiff's Amended Complaint fails. (Dkt. No. 39, Part 8 at 8-10 [Defs.' Mem. of Law].) Simply stated, even liberally construed, Plaintiff's Amended Complaint asserts no factual allegations indicating that Defendants' state of mind was equivalent to the sort of *criminal recklessness* necessary for liability under the Eighth Amendment.[26]

At most, Plaintiff's factual allegations indicate that there may have been a difference of opinion between Defendants Sharma and Burma on the one hand and Plaintiff on the other hand about whether a "double dose" of Prevacid and/or Vioxx would in fact alleviate, exacerbate or have no different effect on Plaintiff's stomach condition and/or arthritic condition; or

---

[26]      *See Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [under the Eighth Amendment is] equivalent to criminal recklessness . . . .").

*conceivably* there may have been a hint of negligence on the part of Defendants Sharma and

Burma with regard to whether Plaintiff's stomach condition and/or arthritic condition were

worsening (because of his either taking a "double dose" of his medications or his refusal to take

his medications) to such an extent that he was experiencing extreme pain.

However, neither differences of opinion nor even negligence is enough to make

Defendants liable to Plaintiff under the Eighth Amendment.[27]  For example, "[d]isagreements

over medications . . . are not adequate grounds for a section 1983 claim."[28]  According to

Plaintiff's own allegations, he was given regular personal attention by two physicians from

December 3, 2002, to February 13, 2003; and it was he himself who chose to stop taking the

medications prescribed to him.  As the Second Circuit has explained,

---

[27]     *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

[28]     *Sonds v. St. Barnabus Hosp. Corr. Health. Servs.*, 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001); *see also Veloz v. New York*, 339 F. Supp. 2d 505, 522-24 (S.D.N.Y. 2004) (granting defendants' motion for summary judgment on plaintiff's claim for deliberate indifference because defendants denied plaintiff's request for a stronger pain medication to treat his back condition based on a mere disagreement as to treatment, and medical malpractice is not actionable under the Eighth Amendment); *Connors v. Heywright*, 02-CV-9988, 2003 WL 21087886, at *3 (S.D.N.Y. May 12, 2002) (granting defendants' motion to dismiss because plaintiff's allegations that defendants forgot to give him his medications, altered his medications, and did not give him his monthly examinations, despite his epileptic seizures, failed to state a claim for deliberate indifference but stated a claim only for negligence).

> It must be remembered that the State is not constitutionally obligated,
> much as it may be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  [A]
> correctional facility is not a health spa, but a prison in which convicted
> felons are incarcerated.  Common experience indicates that the great
> majority of prisoners would not in freedom or on parole enjoy the
> excellence in [medical] care which plaintiff[] understandably seeks
> . . . .  We are governed by the principle that the objective is not to
> impose upon a state prison a model system of [medical] care beyond
> average needs but to provide the minimum level of [medical] care
> required by the Constitution. . . .  The Constitution does not command
> that inmates be given the kind of medical attention that judges would
> wish to have for themselves . . . .  The essential test is one of medical
> necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

In addition, while this question does not play a part in my conclusion, I cannot help but wonder why Plaintiff did not simply break the "double dose" pills in half and take half a pill each day (assuming the pills were not capsules or "timed release" tablets).

In any event, I recommend dismissing Plaintiff's Amended Complaint based on his failure to allege facts upon which a rational fact-finder could conclude, under any factual scenario consistent with Plaintiff's Amended Complaint, that Defendants were deliberately indifferent to any of Plaintiff's serious medical needs.  Because Plaintiff has already been granted an opportunity to amend his Complaint, and because the problem with Plaintiff's Amended Complaint appears to be substantive and not merely formal, I would also recommend that this dismissal be with prejudice.

c.      Personal Involvement

Because of the awkward procedural posture of this case, in which the Amended

Complaint has been served upon an entity and two individuals not named in the Amended

Complaint (i.e., CORC, Dr. Gutierrez and Ms. Bluff), counsel for Defendants has been forced to

advance a somewhat unusual argument.  Specifically, counsel for Defendants argues that any

claims by Plaintiff against CORC, Dr. Gutierrez and Ms. Bluff should be dismissed due to the

lack of any factual allegations in the Amended Complaint indicating the personal involvement of

CORC, Dr. Gutierrez and Ms. Bluff in the alleged constitutional deprivation.  I agree.

Section 1983 requires that a Defendant be personally involved in an alleged constitutional

deprivation in order to be liable for that deprivation.  Here, the names of Dr. Gutierrez and Ms.

Bluff are mentioned nowhere in Plaintiff's Amended Complaint, nor are they even alluded to as

far as any rational fact-finder could tell.  (Dkt. No. 6.)  Moreover, CORC is referenced only once,

in Paragraph 7 of Plaintiff's Amended Complaint.  The entirety of that paragraph reads as

follows:

> IV.      Exhaustion of Administrative Remedies
>
> 7.      I used the prisoner grievance procedure in the Mohawk
> Correctional Facility to try to solve my problem.  Grievance
> M.H.K. 7171-03 date filed 02/13/03.  I had appealed
> Superintendent's decision to Central Office Review Committee
> (C.O.R.C.)  The Central Office Review Committee no denied
> in my appealed grievance non of my request [sic].  Date 4/9/03.

Liberally construed, this paragraph appears to be alleging that CORC involvement in his

Eighth Amendment deprivation consisted of its affirmance, on or about April 9, 2003, of the

Mohawk Correctional Facility Superintendent's denial of Plaintiff's grievance No. MHK 7171-

03 (filed on February 13, 2003) regarding the alleged deliberate indifference by Defendants Sharma and Burdick to Plaintiff's serious medical needs.  Conspicuously missing from this paragraph (and the rest of Plaintiff's Amended Complaint), however, is any allegation that CORC failed to decide Plaintiff's appeal in a timely fashion, that CORC failed to explain in writing the reasons for its affirmance of the Superintendent's decision, or that anyone at CORC acted recklessly in deciding Plaintiff's appeal.  Under the circumstances, I cannot imagine any factual scenario consistent with Plaintiff's Amended Complaint that could impose liability on CORC under any cognizable legal theory.

As a result, I find that, not only has Plaintiff's Amended Complaint failed to give CORC, Dr. Gutierrez and Ms. Bluff "fair notice" of any claim against them under Rules 8 and 10 of the Federal Rules of Civil Procedure, but Plaintiff's Amended Complaint has failed to state a cognizable claim against CORC, Dr. Gutierrez and Ms. Bluff under Rule 12.

For these reasons, I recommend dismissal of Plaintiff's Amended Complaint against CORC, Dr. Gutierrez and Ms. Bluff.  Again, because Plaintiff has already been granted an opportunity to amend his Complaint, and because the problem with Plaintiff's Amended Complaint appears to be substantive and not merely formal, I also recommend that this dismissal be with prejudice.

      **3.**     **Whether Plaintiff Has Failed to Obtain Personal Jurisdiction over the Three Defendants Named in His Amended Complaint, and/or He Has Failed to Obtain Subject Matter Jurisdiction Over the Entity and Two Individuals Whom He Served with His Amended Complaint**

Because I have already concluded that adequate grounds exist for dismissing Plaintiff's Amended Complaint with prejudice, I believe that the jurisdictional issues raised by Defendants in their motion papers are moot. (Dkt. No. 39, Part 8 at 6-7 [Defs.' Mem. of Law].) Therefore, I will not decide those issues, except to note that, generally, I agree with Defendants' arguments.

    **D.**    **Review of Plaintiff's Motion for Injunctive Relief**

Again, because I have already concluded that adequate grounds exist for dismissing Plaintiff's Amended Complaint with prejudice, I believe that Plaintiff's motion for injunctive relief is moot. Therefore, I recommend that Plaintiff's motion be denied. I would add only two points.

First, I agree with Defendants' argument in opposition to Plaintiff's motion–Plaintiff has not met his burden of showing (1) that he will suffer irreparable harm in the absence of an injunction and (2) either (a) a likelihood of success on the merits or (b) a sufficiently serious question going to the merits to make this a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiff's favor. (Dkt. No. 39, Part 8 at 4 [Defs.' Mem. of Law].) Second, I note that Plaintiff's motion for injunctive relief should be denied on procedural grounds, for failing to comply with Rule 7(b)(1) of the Federal Rules of Civil Procedure (which requires that all motions shall "state with particularity the grounds therefor, and set forth the relief or order sought"), and Local Rule 7.1(a)(1) of the Local Rules of Practice for this Court (which requires that Plaintiff's motion include a memorandum of law).

**ACCORDINGLY**, for the reasons stated above, it is

**RECOMMENDED** that Plaintiff's motion for injunctive relief (Dkt. No. 34) be

**<u>DENIED</u>**, and that Defendants' cross-motion for judgment on the pleadings (Dkt. No. 39) be

**<u>GRANTED</u>**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 5, 2006
      Syracuse, New York

George H. Lowe
United States Magistrate Judge